Case 4:22-cv-04282   Document 44   Filed on 06/20/23 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
June 20, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMRO FABRICATING CORPORATION, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL CASE NO. H-22-4282 |
| ASLAN EXPRESS, LLC, and SMOKEY POINT DISTRIBUTING, LLC, | § | |
| Defendants. | § | |
| SMOKEY POINT DISTRIBUTING, LLC, | § | |
| Third-Party Plaintiff, | § | |
| v. | § | |
| BRUZZONE SHIPPING, INC., CORREA USA, INC., KOCH LOGISTICS, LLC, and MORRIS EXPORT SERVICES, | § | |
| Third-Party Defendants. | § | |

**MEMORANDUM AND OPINION**

AMRO Fabricating needed heavy equipment shipped from the Port of Houston to California. AMRO hired Smokey Point Distributing, which AMRO alleges is a motor carrier,[1] (Docket Entry No. 31 ¶ 22), to transport this equipment. (*Id.* ¶ 23). AMRO assumed that Smokey Point would haul the load itself, but it did not. (*Id.* ¶ 25). AMRO engaged Morris Export Services, which picked up the equipment from the Port, brought it to a Houston warehouse, measured it, and provided those measurements to, among others, Smokey Point. The measurements, according to Smokey Point, were wrong. Aslan Express retrieved the equipment from Morris Export and

---

[1] Smokey Point disputes this characterization. (Docket Entry No. 36 at 2).

"proceeded to drive the Equipment into a bridge located in Houston, Texas." (*Id.* ¶ 31). AMRO has sued Smokey Point and Aslan—the original carrier and the carrier that ultimately transported the equipment—under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706.

After AMRO filed its original complaint, Smokey Point filed a third-party complaint against Bruzzone Shipping, Inc., Morris Export, and two other companies. Because this is a motion to dismiss, the well pleaded facts alleged in the complaint are taken as true. In Smokey Point's version of events, the cargo collided with the bridge because AMRO, Bruzzone, Morris, and Correa USA provided Smokey Point incorrect measurements of the height of the cargo. The cargo should have been, but was not, categorized as a "high load" and subjected to additional logistical considerations, including determining whether the load was too high to travel under certain bridges on the planned route. In the third-party complaint against Bruzzone, Smokey Point seeks contribution from Bruzzone for Smokey Point's potential liability to AMRO and asserts claims for negligence, violations of the Texas Deceptive Trade Practices Act, and liability under the Carmack Amendment. (Docket Entry No. 8). Bruzzone has moved to dismiss. (Docket Entry No. 21). The court grants Bruzzone's motion, for the reasons set out below.

I.      **The Legal Standard**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted lawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Proj.*, *Inc. v. Lincoln Prop. Co*., 920 F.3d 890, 900 (5th Cir. 2019).

**II.     Analysis**

Smokey Point's third-party complaint is procedurally unusual because it seeks to "implead[] and tender[] Third Party Defendants Bruzzone, Koch, Morris, and Correa directly liable to [AMRO] for all such claims asserted by [AMRO] against [Smokey Point] in this civil action pursuant to Federal Rule of Civil Procedure 14(c)." (Docket Entry No. 8 ¶ 33; *see also* Docket Entry No. 36 at 4 (Smokey Point "is seeking that Bruzzone be held directly liable to AMRO or that AMRO be foreclosed from seeking the proportionate fault of Bruzzone/AMRO from [Smokey

3

Point].")). The third-party complaint also suggests that Smokey Point seeks contribution from Bruzzone. (*Id.* ¶ 44). Smokey Point invokes Federal Rules of Civil Procedure 14(a)[2] and 14(c).

Smokey Point wants Bruzzone held directly liable to AMRO, and Rule 14(c) permits this kind of impleading. But Rule 14(c) applies only to admiralty or maritime claims, stating as follows:

> (1) If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(i) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable—either to the plaintiff or to the third-party plaintiff— for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences.
>
> (2) The third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant. In that event, the third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim; and the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff.

*Id.* 14(c). Although the subject matter of this dispute involves goods that were first transported by ship from Spain to Houston, neither AMRO nor Smokey Point has invoked the court's maritime jurisdiction. The allegations of the complaint and third-party complaint address only the overland journey of the goods within the United States. Rule 14(c) "requires the third-party plaintiff . . . to assert an action sounding [in] admiralty or maritime." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009). While the court's admiralty jurisdiction "embraces all maritime contracts," *The Eclipse*, 135 U.S. 599, 608 (1890), there is no indication that this dispute involves

---

[2] In its third-party complaint, Smokey Point refers to Rule 14(b). (*Id.* ¶ 33). But Rule 14(b) applies to plaintiffs, not defendants seeking to file a third-party complaint. FED. R. CIV. P. 14(b) ("When a claim is asserted against a plaintiff, the plaintiff may bring in a third party if this rule would allow a defendant to do so."). The court assumes that Smokey Point intended to bring its complaint under Rule 14(a). *Id.* 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.").

4

a maritime contract. Rule 14(c) does not apply, meaning that Smokey Point cannot demand judgment for AMRO—rather than itself—against Bruzzone.

With respect to Smokey Point's own potential claims against Bruzzone, Bruzzone argues that they must be dismissed because (1) Bruzzone is not a "motor carrier" and did not issue a bill of lading to AMRO or Smokey Point, thereby precluding Carmack Amendment liability, and (2) contribution is unavailable under the Carmack Amendment, the only potential source of Smokey Point's liability.

In *Hoskins v. Bekins Van Lines*, 343 F.3d 769 (5th Cir. 2003), the Fifth Circuit held that the Carmack Amendment completely preempts state-law causes of action "for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." *Id.* at 778 (emphasis omitted). The Carmack Amendment provides only for carrier liability and does not impose liability on brokers. *See generally* 49 U.S.C. § 14706; *id.* § 13102(2) (defining a "broker" as "a person, other than a motor carrier."); *Enbridge Energy, LP v. Imperial Freight Inc.*, No. CV H-14-2615, 2019 WL 1858881, at *1 (S.D. Tex. Apr. 25, 2019) ("The Carmack Amendment does not govern the role of brokers with respect to interstate cargo losses and damages."). There is no basis for Carmack Amendment liability, or apportionment under the Carmack Amendment, against Bruzzone if it is not a carrier. *See* 49 U.S.C. § 14706(b) (allowing a carrier subject to liability under the Carmack Amendment to recover from other carriers "over whose line or route the loss or injury occurred"); *5K Logistics, Inc. v. Daily Exp., Inc.*, 659 F.3d 331, 335–36 (4th Cir. 2011) (noting that "Congress explicitly chose not to extend the apportionment remedy to 'brokers'").

Smokey Point does not allege or argue in its opposition brief that Bruzzone is a motor carrier subject to Carmack Amendment liability. Instead, Smokey Point argues that the Carmack Amendment bars only those contribution claims asserted against "downstream wrongdoers," and

that Bruzzone is not "downstream" because it acted as an agent for the shipper, AMRO. (Docket Entry No. 36 at 4). Smokey Point argues that the Carmack Amendment does not apply if the damage to goods was caused by "the act of the shipper [it]self," and that Bruzzone, as AMRO's agent, is effectively "the shipper." (*Id.* (citing *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964)). Smokey Point argues that as a result, its state-law claims are not preempted.

Smokey Point cites *Elmore & Stahl*, but that case did not address preemption. In *Elmore & Stahl*, the Court held:

> [U]nder federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability.

*Elmore & Stahl*, 377 U.S. at 138. If the carrier demonstrates that the shipper caused the cargo damage, the carrier escapes liability under the Carmack Amendment. The holding in *Elmore & Stahl* did not carve out causes of action from the scope of the Carmack Amendment's preemption of state law. Instead, *Elmore & Stahl* "codifi[ed]" a defense previously available at common law. *Id.* at 137. *Elmore & Stahl* does not bar Smokey Point from defending itself against AMRO's claims by showing that AMRO or its agent caused the cargo damage.

Assuming that Bruzzone is "the shipper," state-law claims against it are preempted because they "aris[e] from the interstate transportation of [the goods in question] by a common carrier." *Hoskins*, 343 F.3d at 778. The opinion in *Mayflower Transit, Inc. v. Weil, Gotshal & Manges, LLP*, 2000 WL 34479959, at *1 (N.D. Tex. Oct. 18, 2000), is instructive. In that case, Mayflower Transit, a carrier, sued Weil Gotshal, a law firm, for breach of contract for failing to pay transportation charges apparently related to an employee's relocation. The law firm brought state-law counterclaims, including:

6

> 1) [F]raud by Mayflower in misrepresenting the services it would provide; 2) negligent misrepresentation of the services Mayflower would provide; 3) conversion of the Roberts' jewelry; 4) negligence in failing to provide adequate supervision during the move, thereby enabling the conversion to take place; 5) breach of contract by failing to deliver the Roberts' property in the proper condition and in providing adequate employees or adequate supervision of the move; 6) violations of the Deceptive Trade Practices Act . . . .

*Id.* at *2. The court concluded that claims relating to the formation of the contract were preempted because they were "so closely related to the performance of the contract, and the measure of damages for such claims [is] so likely to be the loss or damage to the goods." *Id.* (quoting *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997)). The district court found all the claims preempted except the claim for conversion of jewelry, because the jewelry was apparently not intended to be shipped and was therefore not covered by the bill of lading. *Id.* at *4. Here, Smokey Point's claims against Bruzzone allege that Bruzzone's conduct resulted in the damage to the goods. They are preempted.

Bruzzone argues that if it is considered to be a broker rather than a shipper, Smokey Point's claims are preempted by another statute, 49 U.S.C. § 14501. That statute provides:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

*Id.* § 14501(c)(1). The statute exempts laws or regulations related to motor vehicle safety, insurance, the transportation of household goods, and tow truck operations. *Id.* § 14501(c)(2)(A)–(C).

Bruzzone cites *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261 (11th Cir. 2023), in support of this argument. In that case, the shipper hired the defendant, Landstar, to secure the services of a motor carrier to transport cargo across state lines. *Id.* at 1264. Landstar turned the

7

cargo over to a fraudster purporting to be a motor carrier. *Id.* The shipper's insurer, Aspen, sued Landstar for its negligent selection of a motor carrier. *Id.* The appellate court first noted the statute's language preempting the enforcement of state laws applying common-law causes of action. *Id.* at 1266 (citing *Nw, Inc. v. Ginsberg*, 572 U.S. 273, 281–84 (2014)). The appellate court went on to find that "related to" encompassed the negligence claim at issue because the cause of action, in this context, had "a connection with, or reference to," the price, route, or services of a broker. *Id.* at 1267 (citing *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008)). Finding that no exception applied, the appellate court affirmed the district court's dismissal of the case based on 49 U.S.C. § 14501(c).

*Aspen American Insurance* is persuasive, and Smokey Point has pointed to no contrary authority. Smokey Point asserts state-law claims for negligence and DTPA violations based on allegations that Bruzzone and others provided incorrect information about the height of the load. These claims "relate[] to the price, route, or service of any . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c). The Carmack Amendment preempts these state-law claims.

### III.    Conclusion

The court grants the motion to dismiss the claims against Bruzzone. The dismissal is with leave to file a motion seeking to amend the third-party complaint should Smokey Point, in discovery, uncover facts materially affecting the conclusions reached in this opinion.

SIGNED on June 20, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge